# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DANIEL DOBROWSKI,

        Plaintiff,

v.

CIVIL NO. 07-13267
HON. LAWRENCE P. ZATKOFF

JAY DEE CONTRACTORS, INC.,

        Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 3, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment [dkt 20]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion is GRANTED.

## II. BACKGROUND

Defendant is a civil engineering construction company, specializing in underground tunnel work. Because Defendant's work focuses on civil engineering, Defendant does not typically employ mechanical or electrical engineers. In 2003, Defendant was awarded a construction project at the Detroit Wastewater Treatment Plant. This project was unique to Defendant in that it did not involve

underground construction but the rehabilitation of various systems within the plant, including mechanical and electrical components.

In August 2003, Defendant posted an advertisement in the Detroit News, seeking "staff engineers":

> Heavy/underground construction company is seeking a staff engineer for Detroit area office. Duties include engineering, cost estimating, scheduling and assistance with project controls. Minimum requirements are BS or equivalent degree in Civil Engineering, construction management or equivalent field plus 2 years experience.

Plaintiff did not possess a civil engineering degree and lacked prior experience with civil engineering companies, but he responded to Defendant's posting. Defendant's President, Tom DiPonio verbally offered Plaintiff a position as a "mechanical-electrical liaison" after determining that Plaintiff could be an asset on the Detroit Wastewater Treatment Plant project because it demanded mechanical and electrical work. Plaintiff had to verify that he could obtain public transportation before accepting the position because he suffered from a complex partial seizure disorder and, although he possessed a driver's license, he restricted himself from operating motor vehicles. Plaintiff ultimately was able to accept the position and worked as the only mechanical engineer at the Detroit Wastewater Treatment Plant project.

Plaintiff's seizure disorder originated when he was five or six years old. The seizures generally manifest in Plaintiff falling to the ground while grasping his head with both hands and pulling his knees up to his chest. The seizures typically do not exceed thirty seconds in duration, and Plaintiff immediately returns to a state of lucidity when the symptoms subside. Plaintiff's seizures include anxiety attacks. Plaintiff experienced several seizures while working for Defendant, but these seizures apparently did not materially impact his work performance.

Plaintiff worked at the Detroit Wastewater Treatment Plant project as the only mechanical engineer. His primary task in that position was to coordinate shutdowns of various parts of the treatment plant to enable the subcontractors to complete their work. Plaintiff also worked with some of the contractors, facilitating submittals and documents required to perform the work as well as passing documents between the subcontractors and the owner.

On September 10, 2004, Plaintiff informed DiPonio and A.G. Mekkaoui, the project manager, that he was pursuing a surgical procedure that could help him with his seizure condition. Plaintiff applied for, and was granted, leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). Defendant acknowledged in writing that Plaintiff was eligible for FMLA leave beginning on October 18, 2004: "Pursuant to the Family and Medical Leave Act, Jay Dee contractors, Inc. will leave your position open for at least twelve (12) weeks from October 18, 2004." In the same letter, Defendant explained that it would supplement Plaintiff's short-term disability benefits to the level of Plaintiff's present salary: "Jay Dee has elected to supplement the insurance payments you receive from The Hartford up to the level of your present salary." After recognizing that the language used in the letter "may be leaving [Defendant] exposed," Defendant's Human Resources manager requested a follow-up letter to clarify that the supplementary payments only applied to the 12-week FMLA period and not to long-term disability benefits. No such clarification was ever sent.

While Plaintiff was on leave, the project attained a level of substantial completion. Although the project continued, it no longer required the manpower as it did at its zenith. Defendant transferred various employees and laid off several others. When Plaintiff arrived at Defendant's headquarters with a return-to-work slip from his physician on December 13, 2004, DiPonio informed

3

him that he was being laid off for "lack of work." Neither the pending lay-off nor the lack of work was communicated to Plaintiff despite several earlier interactions between Plaintiff and DiPonio. When Plaintiff asked DiPonio why no notice had been provided, the latter responded, "Why, so you could stay on medical leave longer?" Plaintiff was released four weeks before the expiration of his 12-week FMLA window. Plaintiff brought suit under the FMLA on both interference and retaliation theories.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV. ANALYSIS

In its Motion, Defendant argues that Plaintiff was not an "eligible employee" because

4

Defendant did not employ 50 or more employees within 75 miles of Plaintiff's work site at the time Plaintiff requested his medical leave. Defendant argues that even if the FMLA covered Plaintiff, his position was eliminated for reasons unrelated to his medical leave—namely, lack of work. As a result, Defendant claims that Plaintiff cannot establish entitlement to reinstatement upon his return from leave.

Plaintiff responds that the underlying facts create a genuine issue of material fact as to whether his rights were violated under the FMLA. He argues that Defendant is equitably estopped from now claiming that he is not an eligible employee after expressly granting him leave under the FMLA. Finally, Plaintiff contends that Defendant interfered with his FMLA rights and retaliated against him for exercising his FMLA rights.

### A. EQUITABLE ESTOPPEL AND ELIGIBLE EMPLOYEES

In order to establish a claim under the FMLA, Plaintiff must be an eligible employee. *See* 29 U.S.C. § 2614(a)(1) (reserving restoration rights for "any eligible employee"). The FMLA defines "eligible employee" as "an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12 month period." *Id.* § 2611(2)(A). The FMLA specifically excludes from its definition "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." *Id.* § 2611(2)(B)(ii); *see also* 29 C.F.R. § 825.110(a). Determinations of the applicability of this exclusion are to be made at the time the employee gives notice of the need for leave. 29 C.F.R. § 825.110(f).

5

Plaintiff provided notice of his need for leave to Defendant on September 10, 2004. At that time, Defendant employed only 37 employees within a 75 mile radius of the Detroit Wastewater Treatment Plant project where Plaintiff was working. According to these calculations, Plaintiff should not have been an eligible employee at the time he requested leave. For reasons unknown, however, Defendant expressly acknowledged that Plaintiff was eligible for leave under the FMLA and granted him the medical leave, promising to hold his position open for a period of 12 weeks. Based on this representation and Plaintiff's subsequent reliance in the form of medical leave, Plaintiff argues that Defendant is equitably estopped from now contesting his eligibility. Defendant takes the position that its designation of Plaintiff's leave as "FMLA" is irrelevant because Plaintiff did not satisfy the FMLA's definition of "eligible employee." Defendant also argues that Plaintiff has not asserted any of the elements necessary for an equitable-estoppel claim.

In *Sorrell v. Rinker*, 395 F.3d 332 (6th Cir. 2005), the Sixth Circuit acknowledged that "under the right circumstances, an employer may be equitably estopped from challenging an employee's entitlement to such leave." *Id.* at 336 (citations omitted). The *Sorrell* court cited a Seventh Circuit opinion, *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579 (7th Cir. 2000), in support of the applicability of equitable estoppel to FMLA cases. In *Dormeyer*, the court held that "an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave." *Id.* at 582.

In support of its position, Defendant observes a series of cases that have invalidated 29 C.F.R. § 825.110(d), which states, "[i]f an employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility." In

*Alexander v. Ford Motor Co.*, 204 F.R.D. 314 (E.D. Mich. 2001), for example, the court joined "[t]he majority of courts addressing this issue" in ruling that the regulatory provision "is invalid because it impermissibly contradicts the clear intent of Congress to restrict the class of employees eligible for the FMLA." *Id.* at 319 (quoting *McQuain v. Ebner Furnaces, Inc.*, 55 F. Supp. 2d 763, 775 (N.D. Ohio 1999)). In another case invalidating the provision, the Second Circuit recognized the potential relevance of equitable estoppel:

> Indeed, it is our view that even in the absence of a formal regulation, the doctrine of equitable estoppel itself may apply where an employer who has initially provided notice of eligibility for leave later seeks to challenge that eligibility. Thus, future employees who rely to their detriment upon the assurance of their employer that they qualify for leave under the FMLA may have recourse to the doctrine of equitable estoppel even without an enforceable regulation protecting their right to rely upon an employer's notice of eligibility.

*Woodford v. Cmty Action of Greene County*, 268 F.3d 51, 57 (2d Cir. 2001). Under these cases, a preference for strict application of the eligible-employee requirements emerges. It is equally clear, however, that such a preference is not immune from equitable-estoppel claims.

Defendant alleges that Plaintiff "has not adequately alleged the necessary elements" for a claim of equitable estoppel. To establish a claim for equitable estoppel, five elements must be satisfied:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 861 (6th Cir. 2007). The application of equitable

7

estoppel presents mixed questions of fact and law. *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir. 1984). Determining "[w]hether facts proven are legally sufficient to constitute an estoppel is a question of law." *Id.* Here, Defendant informed Plaintiff in writing that he was eligible for leave under the FMLA. Plaintiff, in turn, took medical leave in order to have surgery. Plaintiff has not alleged, however, and the facts of the case do not establish, that Defendant knew that Plaintiff was not, in fact, an eligible employee. Nor do the facts establish intention on the part of Defendant to induce Plaintiff into reliance. On the contrary, Plaintiff first approached Defendant about the issue of leave on his own initiative and had already begun the process of scheduling the surgery prior to obtaining approval. Even when construing the facts in the light most favorable to Plaintiff, the Court finds that they are not sufficient to establish an equitable-estoppel claim. Accordingly, Plaintiff was not an eligible employee for FMLA purposes.

### B. FMLA INTERFERENCE AND RETALIATION

Even if Plaintiff were able to demonstrate that he was an eligible employee under an equitable-estoppel theory, he would still not be entitled to relief on his claims. Plaintiff argues that he was never informed, and the job posting did not indicate, that his employment was tied to one specific project. Plaintiff maintains that he was the only engineer terminated for lack of work and that the three remaining engineers were ultimately transferred or left on their own accord. In support of his position, Plaintiff further observes that Defendant was seeking to extend deadlines in part due to mechanical work and that Defendant claimed extra compensation for Plaintiff's position for work performed well after his termination.

In its Motion, Defendant maintains that Plaintiff cannot establish reinstatement rights under

8

the FMLA because Defendant possessed a lawful reason for not restoring Plaintiff to his previous position. Defendant contends that Plaintiff was hired for one specific project and while Plaintiff was on medical leave, the project began to wind down to the point that Plaintiff's position was eliminated for lack of work. Because Defendant's work does not typically involve mechanical engineering, Defendant takes the position that no lateral or comparable positions were available. In short, Defendant maintains that it would have terminated Plaintiff's employment regardless of his medical leave.

Under the FMLA, an eligible employee is entitled to a total of 12 weeks of leave during any 12-month period to care of a spouse, child, or parent with a "serious health condition" or if the employee has a "serious health condition" that renders the employee unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1)(C)–(D). A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider. 29 C.F.R. § 825.114(a). To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F. 3d 238, 244 (6th Cir. 2004); *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 723–24 (6th Cir. 2003).

Persons claiming a violation of the FMLA can proceed under two theories—the "interference" theory and the "retaliation" theory. Plaintiff claims violations under both theories but, for reasons set forth below, his claims would fail even if he could establish that he was an eligible employee.

### 1. *Interference with Rights Under the FMLA*

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" certain rights created by statute. 29 U.S.C. § 2615(a)(1). Among these statutory rights

is the right of an eligible employee, upon the expiration of medical leave, to be restored to the position held by the employee when the leave commenced. To state a prima facie interference claim a plaintiff must show that:

>     (1)   He is an eligible employee;
>     (2)   Defendant is a covered employer;
>     (3)   He was entitled to leave under the FMLA;
>     (4)   He gave defendant notice of his intent to take leave; and
>     (5)   Defendant denied him FMLA benefits to which he was entitled.

*Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005); *Hoge*, 384 F. 3d at 244; *Arban v. W. Publ'g Co.*, 345 F.3d 390 (6th Cir. 2003); *Cavin*, 346 F.3d at 719, 723–24.

Under the FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work. *See* 29 C.F.R. § 825.216(a). The FMLA does not protect individuals from termination for reasons unrelated to the leave itself. *See, e.g.*, *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). An employee returning from FMLA leave is not entitled to restoration unless he would have continued to be employed had he not taken FMLA leave. *Hoge*, 384 F.3d at 245. In this way, the substantive right to reinstatement "is not . . . absolute." *Pharakhone v. Nissan N. Am.*, 324 F.3d 405, 407 (6th Cir. 2003) (quoting *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001)). Employers "must show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 C.F.R. § 825.216(a). In instances where employees are hired for specific projects or terms, the employer "has no obligation to restore the employee if the employment term or project is over and the employer would not otherwise have continued to employ the employee." *Id.* § 825.216(b). Once an employer alleges that an employee would have been discharged regardless of medical leave, the employee must establish that the employer's evidence

is insufficient and that the employee would not have been terminated but for his FMLA leave. *Arban*, 345 F.3d at 401.

Plaintiff's chief responsibility was to coordinate shutdown requests and when Plaintiff went on leave in October 2004, those requests were occurring infrequently such that Defendant no longer required a full-time mechanical engineer. Than Mohammed, the employee in charge of scheduling at the Detroit Wastewater Plant testified that the project was at a "trickle" when Plaintiff took his leave. Defendant embarked on a gradual reduction of employees beginning with laying off employee Dan Pace in November 2004. Plaintiff "was one of many employees who were laid off" and only three employees were transferred to different worksites. Despite Plaintiff's contention that he was the only engineer laid off, Mekkaoui testified that one other civil engineer was laid off. Further, Defendant rarely used mechanical engineers. Given these facts, the Court finds that Defendant would not have retained Plaintiff if he had not taken medical leave.

### 2. Retaliation

Plaintiff would be similarly unsuccessful under his retaliation claim. The retaliation provision under the FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). A retaliation claim under the FMLA is analyzed under the burden-shifting framework used in Title VII claims, originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later refined in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981); *see also Skrjanc v. Great Lakes Power Serv. Co.*, 272 F. 3d 309, 315 (6th Cir. 2001).

Under the *McDonnell Douglas* framework, Plaintiff first has the burden of proving, by a

11

preponderance of the evidence, a prima facie case of retaliation. *See Burdine*, 450 U.S. at 252–53. Plaintiff may meet this burden by showing that: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the protected activity and the adverse employment action. *Saroli*, 405 F.3d at 451 (citing *Skrjanc*, 272 F.3d at 314); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Proof may be offered in the form of either direct or circumstantial evidence. *See Skrjanc*, 272 F.3d at 315. If Plaintiff establishes a prima facie case, Defendant must articulate a legitimate, non-retaliatory reason for discharging Plaintiff. *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000). To meet its burden, Defendant "must clearly set forth, through the introduction of admissible evidence, the reasons . . ." for the discharge. *Burdine*, 450 U.S. at 225. Should Defendant carry this burden, Plaintiff has an opportunity to prove, by a preponderance of the evidence, that Defendant's stated reason is pretext for unlawful retaliation under the FMLA. *Id.* at 253.

Even if Plaintiff established his status as an eligible employee, he could not establish a causal connection between his FMLA leave and being laid off. Although the fact that Plaintiff was terminated immediately upon his return from FMLA leave may raise an inference of illegal motivation, "temporal proximity alone will not support an inference in the face of compelling evidence." *See, e.g.*, *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 555 (6th Cir. 2003) (quoting *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987)). Defendant sets forth "lack of work" as its legitimate business reason for Plaintiff's termination because the project was slowing down when Plaintiff took his medical leave. Defendant's position is supported by the fact that it laid off several other employees. In the face of this reality, DiPonio's sarcastic remark directed toward

Plaintiff upon his return is insufficient to show that Defendant's legitimate business reason was mere pretext.

## V. CONCLUSION

IT IS ORDERED that Defendant's Motion for Summary Judgment [dkt 20] is GRANTED.

IT IS SO ORDERED.


       s/Lawrence P. Zatkoff
       LAWRENCE P. ZATKOFF
       UNITED STATES DISTRICT JUDGE

Dated: June 3, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 3, 2008.

       s/Marie E. Verlinde
       Case Manager
       (810) 984-3290